Filed 12/24/20  In re Ivan W. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re IVAN W., a Person Coming Under the Juvenile Court Law. | B302034 (Los Angeles County Super. Ct. No. 18CCJP01243) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. SELENE M., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Selene M. (Mother) appeals from the juvenile court's order terminating her reunification services at the 18-month review hearing for three-year-old Ivan W.  Mother contends there was insufficient evidence to support termination of her family reunification services at the 18-month permanency review hearing (Welf. & Inst. Code, § 366.22).[1]  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Dependency Petition and Detention*

In February 2018 the Los Angeles County Department of Children and Family Services (the Department) was notified Mother's 15-year-old son R.M. made threats against other high school students and faculty and had been hospitalized the previous year for threatening to execute a mass school shooting. Following an investigation of the family's home, the Department filed a dependency petition on behalf of 22-month-old Ivan and his half-siblings R.M., seven-year-old Selena M., and three-year-old Christopher A.[2]  The petition alleged Mother's home was

_____

[1]    Further statutory references are to the Welfare and Institutions Code.

[2]    Mother's appeal concerns only Ivan.

filthy and unsanitary with human and animal feces, trash, food, piles of clothes, dirty diapers, broken glass and objects on the floors, and standing water, food, and mold residue on the kitchen sink. The petition also alleged Mother had mental health issues including posttraumatic stress disorder and major depression, which rendered Mother incapable of providing regular care for the children and placed them at risk of serious physical harm. Further, Mother forced R.M. to stay home to care for his siblings, failed to ensure he received treatment for his mental health condition, and failed to address R.M.'s mass shooting ideation by limiting his viewing of inappropriate Web sites. At the February 27, 2018 detention hearing, the juvenile court detained Ivan from Mother and granted Mother unmonitored visits in a neutral setting.

On March 15, 2018 the Department filed a first amended petition that also alleged Mother and Ivan's father, Ivan W., Sr. (Father), had a history of domestic violence and engaged in violent altercations in Ivan's presence. Further, Father had a history of substance abuse and used illicit drugs, and he had mental and emotional problems.[3]

B.    *The Jurisdiction and Disposition Hearing*
On March 23, 2018 the juvenile court sustained the allegations in the first amended petition concerning Mother's unsanitary home, mental health issues, failure to ensure mental health treatment for R.M., and domestic violence with Father. The court removed Ivan from Mother's physical custody and

---

[3]    Father is not a party to the appeal.

granted her family reunification services. The court ordered Mother to undergo a psychiatric evaluation, take all prescribed psychotropic medications, and participate in individual and mental health counseling and parenting classes. The court granted Mother unmonitored visitation in a neutral setting.

## C.  *The Six-month Review Period*

As of the September 21, 2018 status report, Ivan was doing well in a foster home, where he and Christopher had been placed together. In March 2018 Ivan was diagnosed with gross developmental delay, and at that time he did not meet his developmental milestones. Since his placement, however, then-two-year-old Ivan had become more verbal and started to walk independently with the help of his caregiver. Ivan's August 13 regional center assessment indicated he had a developmental age of 16 months compared to his actual age of 28 months.

According to a May 27, 2018 psychological evaluation, Mother suffered from complex posttraumatic stress disorder. Mother had "very poor judgment and very little insight," and she externalized blame and took little responsibility for the children's conditions. (Boldface omitted.) In August 2018 Mother started sessions with a licensed counselor, Evangelina Recendez. Mother also made progress cleaning her home with the help of cleaning staff she hired. But Mother did not visit Ivan in June 2018 because she went to visit family in Florida. Mother stated she "needed a break" and was "taking care of herself."

At the September 21, 2018 six-month review hearing, the juvenile court found Mother was in substantial compliance with her case plan, and the court granted Mother additional reunification services.

4

D.    *The 12-month Review Period*

Mother completed her parenting classes on December 13, 2018.  In addition, Mother voluntarily enrolled in domestic violence classes.  But Mother did not have any contact with her counselor since her last counseling session on August 17, 2018.

On January 22, 2019 the social worker reported Mother had one unmonitored visit with Ivan in November 2018 and three visits in December.  Mother did not visit Ivan in January or February 2019.  Mother stated she "was taking a month off from visiting because she need[ed] a break."  Mother reported she went to Colorado for a ski trip in January 2019, visited family out of state, and had taken up surfing because it was nice to have time to care for herself even though she missed the children.  Mother was also pregnant with her ninth child, but the father did not want any involvement with their future child.  The social worker reported the condition of Mother's home had improved, but the home continued to have "safety hazards" and "heaps of clutter."

Ivan's caregivers were committed to adopting Ivan and Christopher if they were not reunified with their parents.  Ivan was walking and running on his own, and he could say a handful of words.  As of May 2019 Mother has been "mostly consistent" in attending her weekly therapy sessions with Recendez.  Recendez did not have any concerns about the children being released to Mother.

On June 6, 2019 the social worker reported Mother continued to struggle with periodic mental health symptoms including depression.  Mother failed to acknowledge her role in Ivan's detention, and she prioritized herself over his needs.  Before Mother became pregnant, she stated Saturdays were for

her to go surfing.  Mother visited Ivan every other Sunday for two hours.

At the June 6, 2019 12-month review hearing, the juvenile court found Mother was in substantial compliance with her case plan and granted Mother additional reunification services.

E.      *The 18-month Review Period*

The social worker reported in August 2019 that Mother had started to visit Ivan every Sunday.  However, Mother usually visited Ivan for only one and a half of the allotted two hours.  Although Mother had "made tremendous progress in cleaning her home, with the help of housekeepers, there [were] still safety concerns in the home."  Further, Mother had not provided proof of her mental health services or her compliance with her medication.

Mother submitted a progress letter from Recendez that indicated Mother had completed a domestic violence counseling program and was consistently attending individual counseling.  Because of Mother's recent medical issues, she was having telephonic sessions with Recendez.  Recendez stated Mother had developed safe coping skills to deal with her posttraumatic stress disorder, including deep breathing, grounding, and meditation techniques.  In addition, Mother had actively participated in recreational and work therapy.

Mother's housekeeper reported she had been working with Mother for 15 years, and she currently cleaned Mother's house for four to five hours, three times a week.  The housekeeper observed Mother's house was cleaner than before, and Mother was slowly taking care of the clutter.  The social worker visited Mother's home in September 2019 after Mother gave birth to Gabriela S.

and observed the house was "somewhat clean."[4]  But the social worker advised Mother to remove papers and clutter from the bedroom that Mother shared with the baby.  And at an October 7 home visit, the social worker "observed Mother's history of unresolved hoarding continues as the residence appears cluttered."  In addition, Mother did not want to provide information about Gabriela's father because he was aggressive.

Mother last saw Ivan on September 4, 2019, and she stated she could not visit Ivan until November because she could not drive following her C-section.  The social worker stated Mother had not resolved her case issues because Mother continued to neglect the children's needs; her home continued to be cluttered and unsafe; she used muscle relaxers and other medication while breastfeeding; and she had not been treating her depression and posttraumatic stress disorder since she became pregnant.  Also, on October 4, 2019 Recendez reported she had not seen Mother for counseling since Mother gave birth to her child.

F.    *The 18-month Permanency Review Hearing*

At the October 31, 2019 18-month review hearing, the juvenile court terminated Mother's family reunification services.  The court explained, "As to the mother, what I find is over a period of time, although she has been participating in services to some degree, she hasn't completed individual counseling, which would be one of the most important components, given her ongoing mental health problems.  I also find there has been a failure to progress with . . . her mental health issues. . . .  I find

---

[4]    The juvenile court later detained Gabriela from Mother on October 21, 2019.

7

that that is indicated in two ways:  One, that the home continues to be . . . cluttered and messy, and that is not simply a superficial issue, I believe it reflects problems with her mental health, and as I had noted when I removed Gabriela, the baby, it did affect her son's mental health so it affects the family when the home become unlivable—or almost unlivable.  I understand that [Mother] has recently had a baby, but I don't think this is the exception.  It has been years that this problem has gone on, and although there is a cleaner who claims to have worked for the mother for 15 years, the problem persists.  At times, the Department has been able to help her or ensure that the home becomes clean, but it then reverts back . . . ."

The court further stated, "[T]hen, the second way I find that it manifests is that the mother's judgment and insight seems not to have improved over time, and that she has, again, gotten herself into a relationship where she describes the man, who is the father of her current child, as violent, and she has had this problem in the past.  And when Gabriela was removed, I made findings as to items found in the home, random prescribed drugs.  It is unclear what she was supposed to be taking.  They were out and accessible, and I found a number of instances of the condition of the home indicating a lack of judgment by the mother, as well as . . . there have been times during the case where she has decided not to visit the children for an extended period of time, and although that hasn't happened recently, . . . but those lapses in visitation, I think, are lapses in judgment and insight as to how her behavior affects her children, and I don't believe that she has progressed enough that it is safe for the children to go home."  The court found existing conditions justified its continued jurisdiction, Ivan would be at substantial risk of detriment if

8

returned to Mother's custody, and the Department made reasonable efforts to return Ivan to Mother's care.  Although the court terminated Mother's family reunification services, it did not set a section 366.26 hearing as to Ivan because the court had not yet held a permanency review hearing for Father under section 366.22.

Mother timely appealed.

## DISCUSSION

A. *Governing Law*

"At the 18-month permanency review hearing the juvenile court must order a child returned to a parent's custody unless it finds, by a preponderance of the evidence, that return of the child will create a substantial risk of detriment to the child's safety, protection or physical or emotional well-being.  (§ 366.22, subd. (a).)" (*Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 864 (*Georgeanne G.*); accord, *M.G. v. Superior Court* (2020) 46 Cal.App.5th 646, 660.)  "That standard is construed as a fairly high one.  [Citation.]  It does not mean the parent in question is less than ideal, did not benefit from reunification services as much as we might have hoped, or seemed less capable than the available foster parent or other family member." (*M.G.*, at p. 660; accord, *Georgeanne G.*, at p. 864.)  "If the child is not returned to a parent at the permanency review hearing, the court must terminate reunification services and order a hearing pursuant to section 366.26.  (§ 366.22, subd. (a).)" (*Georgeanne G.*, at p. 864; accord, *M.G.*, at p. 660 ["If the child may not safely be returned to the parents within a maximum of 18 months from removal, the court must develop a permanent plan for the child."].)  "However,

the court has discretion to enter a home-of-parent order while continuing court supervision and services." (*Georgeanne G.*, at p. 864; accord, *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 312.)

"We review the juvenile court's finding of detriment for substantial evidence." (*Georgeanne G., supra*, 53 Cal.App.5th at p. 864; accord, *In re A.J.* (2015) 239 Cal.App.4th 154, 150.) ""In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.""" (*In re I.J.* (2013) 56 Cal.4th 766, 773; accord, *Georgeanne G.*, at p. 866.)

B.     *Substantial Evidence Supports the Finding Ivan Would Be at Substantial Risk of Detriment If Returned to Mother's Custody*

Mother contends the juvenile court erred in failing to return Ivan to her custody and declining additional reunification services in light of her significant progress with her services and successful unmonitored visitation with Ivan. Mother points to Recendez's report that Mother had developed safe coping skills to deal with her posttraumatic stress disorder. But as of June 2019, the social worker reported Mother continued to struggle with mental health symptoms including depression. One manifestation of Mother's mental health problems was her continued hoarding (albeit lessened) that created "safety concerns

10

in the home," despite mother's hiring a cleaning person. And by September 2019 Mother had discontinued her court-ordered counseling sessions, even though she was previously attending sessions with Recendez telephonically. Mother still lacked insight into the impact her conduct had on Ivan and failed to consistently visit Ivan and prioritize his needs. Mother did not visit Ivan in June 2018, visited once in November 2018, and did not see him in January and February 2019, instead travelling to Colorado, visiting her family, and taking up surfing. From March to June 2019, Mother visited Ivan on only alternating Sundays for two hours. In August 2019 Mother saw Ivan every Sunday, but visited him for only one and a half hours instead of the allotted two hours. Mother last visited Ivan on September 4, 2019, and she did not plan to visit Ivan until November. Although Mother claimed she could not drive to the visits because of her C-section, she did not provide medical documentation of her inability to drive or explore alternative forms of transportation. During the 19 months of family reunification services, Mother never progressed to overnight visits with Ivan (or to more than two hours of visitation each week). By prioritizing her needs over those of Ivan, Mother continued to demonstrate poor judgment and lack of insight. Substantial evidence therefore supports the juvenile court's finding that return of Ivan to Mother would create a substantial risk of detriment to him. (§ 366.22, subd. (a); *Georgeanne G., supra*, 53 Cal.App.5th at p. 864.)[5] Because Ivan was not returned to

---

[5] As discussed, the juvenile court also noted Mother again became involved with a violent man (Gabriela's father).

Mother at the permanency review hearing, termination of reunification services was required.  (§ 366.22, subd. (a); *Georgeanne G.*, at p. 864.)

## DISPOSITION

The October 31, 2019 order terminating Mother's family reunification services is affirmed.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

---

Although Mother notes she had the insight to leave the man, Mother refused to provide the social worker any information about him.