Filed 8/6/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re A.J., a Person Coming Under the Juvenile Court Law | |
| | E061153 |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES | (Super.Ct.No. J245102) |
| Plaintiff and Respondent, | ORDER MODIFYING OPINION |
| v. | |
| L.M., | [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

The opinion filed in this matter on August 4, 2015, is hereby modified, as follows:

1. On page 8, in sentence number 5 under the Discussion section, delete the words "the People" and replace them with "CFS".

2. On page 10, the last sentence of the paragraph beginning on page 9 should be deleted and replaced with:

> However, as discussed below, this very substantiated finding of detriment was unnecessary given that the law does not change, once guardianship is selected as a child's permanent plan, to suddenly give a merely alleged or biological father a new presumptive right to visitation.

1

3.   On page 12, the first sentence of the first full paragraph should be deleted and

replace with the following:

> Our Supreme Court in *Zacharia D*. had no trouble
> determining that "parent" in section 361.5, subdivision (a),
> did not include a merely alleged or biological father.

Except for these modifications, the opinion remains unchanged.  This modification

does not change the judgment.

CERTIFIED FOR PUBLICATION

RAMIREZ_____
P. J.

I concur:

HOLLENHORST_____
J.

Filed 8/4/15 (unmodified version)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re A.J., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>L.M.,<br><br>    Defendant and Appellant. | E061153<br><br>(Super.Ct.No. J245102)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Christopher Marshall, Judge.  Affirmed.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Regina A. Coleman and Jamila Bayati, Deputy County Counsels, for Plaintiff and Respondent.

Appellant L.M. (father) is the biological father of A.J. (child), who was six years old on May 13, 2014, the date of the challenged order. Father appeals from the juvenile court's order at the Welfare and Institutions Code, section 366.26[1] permanency planning hearing denying him supervised visitation with the child based on a finding of detriment. As discussed below, while substantial evidence does support the court's finding of detriment, we wish to clarify that the court was not required to make such a finding because, as a mere biological father, father is not considered a "parent" for purposes of section 366.26, subdivision (c)(4)(C) and thus is not presumptively entitled to visits during guardianship.

## FACTS AND PROCEDURE

*Detention*

On July 13, 2012, the San Bernardino County Department of Children and Family Services (CFS) filed a petition under section 300 after the four-year-old child's mother struck him across the face with her hand and caused him to have two black eyes and bruises on the left side of his face. CFS also alleged the child's mother had a substance abuse problem and was incarcerated. CFS alleged that father had allowed the child to be at risk in the mother's care, and had an unstable and unsafe lifestyle, and that his whereabouts were unknown.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

4

At the detention hearing held on July 16, 2012, mother told the juvenile court that father was homeless and she had not had contact with him in months. The social worker confirmed that she had spoken to the paternal grandmother, who confirmed that father was homeless in the Chino area and that she would have him contact the social worker. The court ordered the child detained in foster care pending approval of and placement with the maternal grandparents.

*Jurisdiction and Disposition*

At the jurisdiction and disposition hearing held on August 21, 2012, the juvenile court struck two of the allegations regarding father and found only that his unstable and unsafe lifestyle placed the child at substantial risk of abuse. The court declared father a biological father, but not a presumed father, and therefore not entitled to reunification services. Counsel for father asked for supervised visits, but because father was a registered sex offender on parole, the court declined to order visits until father's parole officer changed the conditions of his parole to allow him contact with his own minor children. The court offered reunification services for the child's mother and ordered the child placed with the maternal grandparents.

*Review Hearings*

At the six-month review hearing held on February 20, 2013, the juvenile court continued the mother's reunification services and authorized weekly visits between the child and his mother once mother was released from custody.

5

At the 12-month review hearing held on August 20, 2013, the juvenile court continued the mother's reunification services and authorized her supervised visits to be changed to unsupervised by approval packet.

At the combined 18-month review hearing held on January 9, 2014, the juvenile court terminated the mother's services but determined it would not be in the child's best interest to consider terminating parental rights. The court limited the recommendation to guardianship or a planned permanent living arrangement. The court set the section 366.26 hearing for May 9, 2014.

*Section 388 Petition*

On March 7, 2014, father filed a section 388 petition to modify a court order. Specifically, father asked the court to change the order it made at the August 21, 2012 jurisdiction and disposition hearing denying father reunification services because he was a mere biological father and denying visitation because of his parole conditions. Father noted as the changed circumstances that he was paroled from prison on February 19 and that his special conditions of parole had been changed to exclude his biological children from the ban on contact with minors. Father stated the requested changes would be better for the child because "It would allow him to have his biological father in his life. It will also allow us to build a father-son bond. I feel this will be better [for] both of us because it will give us the chance to get to know each other and be a positive influence in each other's lives."

6

CFS filed an addendum report in response, recommending the court deny the petition. The basis for this recommendation was that father had no relationship with the child since the child was an infant; had not visited the child since the removal; had made no efforts to participate in services independently; had been in and out of custody since the dependency because of parole violations; and since filing the section 388 petition, father violated his parole and was incarcerated only one month after his February 19 release because he had used methamphetamine and cut off his GPS tracking device.

At the proceedings on the section 388 petition held on April 10, 2014, the court concluded the petition had not stated a prima facie case for relief, and so denied the petition without taking evidence.

*Section 366.26 Permanency Planning Hearing*

The section 366.26 hearing was scheduled for May 9, 2014. At that hearing father argued he was entitled to visits with the child unless the court found the visits would be detrimental, pursuant to section 366.26, subdivision (c)(4)(C). That subdivision provides that, when a court sets guardianship as a child's permanent plan, "The court shall also make an order for visitation with the *parents* or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." CFS argued that no finding of detriment was necessary because father had not been determined to be a presumed father and had been denied reunification services, and thus was not a "parent." The court asked the parties to research the issue and set the hearing contested as to father's visitation for May 12.

7

On May 12, the parties agreed that a finding of detriment was necessary at the guardianship stage of the proceedings to deny visitation to even a biological father, although they disagreed as to whether the detriment finding should be made by clear and convincing evidence or by a preponderance of the evidence. CFS called father to testify. Father testified that he was currently incarcerated, with a parole date of July 5, for violating his parole 30 days after his most recent February 19 release by cutting off his GPS tracking device. Father testified: "I was out late at night because I was out on Baseline Boulevard with a transsexual lover of mine who happened to be a prostitute." Asked why he took off the tracking device, father replied "I was out after my curfew, and I didn't want them to track me." Father testified that he had three prior convictions for indecent exposure, and a conviction for annoying and molesting a child.[2] Father had been in and out of custody for the previous six or seven years, and agreed when asked whether "when you get out of jail, you tend to return to jail fairly soon?" Father testified that he had seen the child about six times and that the last time was in 2010 or 2011, with several relatives at a pizza restaurant, when the child was about eighteen months old. Father also stated that each time he had gotten out of prison since the dependency began in 2012, he would telephone the maternal grandparents to let them know, and that each time he would speak with the child briefly over the telephone, for about two minutes.

---

[2] The parole violation report, dated March 20, 2014, listed father's convictions as including three convictions for indecent exposure (Pen. Code, § 314.1), and one conviction each for annoying/molesting a child (Pen. Code, § 647.6, subd. (a)), lewd and lascivious acts with a child under 14 (Pen. Code, § 288, subd. (a)), robbery (Pen. Code, § 211), sexual battery (Pen. Code, § 243.4, subd. (a)) and assault (Pen. Code, § 240).

Father stated he had spoken with the child by telephone about 15 or 20 times, including recently when mother was talking with the child and put father on the telephone. When asked whether he would abide by a juvenile court order that he have no contact with the child, father replied "I'm going to try to the best of my ability, but I want to have a relationship with my son. And I can't promise nothing."

Father called the social worker to testify. When asked whether she was aware that the child had ever refused to visit with father or had any emotional distress after speaking to father, she replied that she was not aware of any such reactions by the child.

Father then called the maternal grandfather to testify. He testified that he was aware of only one telephone call between father and the child, which was when mother was talking to the child and put father on the telephone. The child did not have any particular reaction during or after speaking with father. Although the child told father that he loved him, after saying he did not want to talk on the telephone, the grandfather testified that the child often said "I love you" to people, and often did not want to talk to anyone on the telephone.

On May 13, 2014, the juvenile court heard argument from the parties. At that point, in a change from its previous position, CFS argued that a biological father is not entitled to visitation at the guardianship stage of the proceedings and thus the court need not make a finding of detriment before denying father visitation. The court then determined, under section 366.26, subdivision (c)(4)(C), and after having considered the testimony of the witnesses and all other evidence, that visitation with father would be

detrimental to the child. In support of this finding, the court cited the child's young age, the lack of bonding between father and the child, father's frequent violations of parole, his recent methamphetamine use and contact with a prostitute, his long history of drug use, his multiple sex crimes against minors, and his stated and demonstrated unwillingness to respect authority. The court then declined to terminate parental rights, selected legal guardianship with the maternal grandparents as the permanent plan, and granted the child's mother supervised visitation.

This appeal followed.

## DISCUSSION

Father argues the juvenile court erred when it denied him supervised visitation because there is insufficient evidence that visitation would be detrimental to the child's physical safety or emotional well-being. CFS first counters that sufficient evidence supports the detriment finding. In any case, CFS argues, the court need not make a finding of detriment at all. This is because a mere biological father is not a "parent" within the meaning of section 366.26, subdivision (c)(4)(C), and so father is not presumptively entitled to a visitation order upon establishment of a guardianship. As discussed below, we affirm the judgment on both grounds argued by the People— sufficient evidence supports the detriment finding, but the juvenile court need not have made the detriment finding because a mere biological father is not a "parent" entitled to visitation during guardianship under section 366.26, subdivision (c)(4)(C).

1. *Sufficient Evidence Supports the Detriment Finding.*

10

The juvenile court's detriment finding is reviewed under the substantial evidence standard. (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763.) Substantial evidence "means evidence that is 'reasonable, credible and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case. [Citation.] In the absence of substantial evidence showing such detriment, the court is required to return the minor to parental custody. [Citation.]' [Citation.]" (*In re E.D.* (2013) 217 Cal.App.4th 960, 966.)

"Detriment is a familiar standard in child welfare determinations; but, as several courts have acknowledged, the notion of detriment is at best a nebulous standard that depends on the context of the inquiry . . . . It cannot mean merely that the parent in question is less than ideal . . . . Rather, the risk of detriment must be *substantial*, such that [the proposed action] represents some danger to the child's physical or emotional well-being." (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1490.)

The evidence that even supervised visitation with father presented some danger to the child's physical or emotional well-being is as follows. First, as the juvenile court emphasized, the child was young, only six years old, and had no bonding or relationship with father whatsoever. Father and the child had last seen each other when the child was about eighteen months old. The child had recently spoken to father on the telephone and had treated him like anyone else—the child was at first reluctant to talk on the telephone and then told father "I love you" only after prompting, and in the same manner that he would say it to anyone else. Second, father frequently violated his parole, had been in

11

and out of custody for the previous six or seven years, stated under oath that he could not promise that he would abide by juvenile court orders regarding visitation and contact, and testified that he only respected the terms of his parole supervision "To a point." Third, this most recent violation of parole involved cutting off his GPS tracking device, drug use and sex with a prostitute only 30 days after being released from prison. Fourth, father had a long-standing problem with abusing drugs, beginning at the age of 13. Fifth, and certainly not least, father had a rather long record of serious criminal convictions, *including several for sex crimes against children.* Overall, given that father regularly engaged in such risky behavior—risky to both himself and the child—and the bond between father and the child was negligible, we find substantial evidence supports the juvenile court's finding that even supervised visits between father and the child represented a danger to the child's well-being and thus would be detrimental. However, as discussed below, this very substantiated finding of detriment was unnecessary given that the law does not change, once guardianship is selected as a child's permanent plan, to suddenly give a mere alleged father a new presumptive right to visitation.

2. *A Biological Father is Not a "Parent" under Section 366.26, Subdivision (c)(4)(C)*

The full text of section 366.26, subdivision (c)(4)(C), governing parental visitation after a child is placed in a permanent plan of guardianship, is as follows: "The court shall also make an order for visitation with the *parents* or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or

emotional well-being of the child." [Italics added.] This statute does not define what the Legislature meant by "parents" for purposes of this statute and we have found no case law directly addressing this issue. We therefore turn to statutes and case law defining "parents" in the broader context of dependency law.

The Uniform Parentage Act (UPA), Family Code Section 7600 et seq.,[3] "provides the statutory framework for judicial determinations of parentage, and governs private adoptions, paternity and custody disputes, and dependency proceedings. [Citations.]" (*In re M.C.* (2011) 195 Cal.App.4th 197, 211.) While the UPA does not definitively say what is a "parent" for purposes of section 366.36, subdivision (c)(4)(C), and in fact does not provide a single definition of the term "parent" at all, we look to it for guidance because, as stated above, it does govern determinations of parentage and dependency proceedings generally.

"[T]he need to establish a father's status in a dependency proceeding is pivotal; it determines the extent to which he may participate in the proceedings and the rights to which he is entitled. [Citation.] [¶] . . . A biological or natural father is one whose biological paternity has been established, but who has not achieved presumed father status . . . .' [Citation.]" (*In re M.C.* (2011) 195 Cal.App.4th 197, 211-212.)

By far the most relevant case on this issue is *In re Zacharia D* (1993) 6 Cal.4th 435 (*Zacharia D.*). In fact, we find this case, combined with the common sense argument discussed below, to be dispositive. In *Zacharia D.*, our Supreme Court was called upon

---

[3] Formerly found at Civil Code Section 7000 et seq.

13

to similarly determine the definition of "parent" in section 361.5, subdivision (a), which at that time required a court to provide reunification services to the "parents" of children who were removed from their home, with certain exceptions.[4]  Again as with the question we must determine here, the Supreme Court was asked to determine whether a biological or alleged father, who is not also a presumed father, is a "parent."  The operative language in that section at that time, which parallels that in section 366.26, subdivision (c)(4)(C) was as follows:  "Except as provided in subdivision (b), whenever a minor is removed from a parent's or guardian's custody, the juvenile court shall order the probation officer to provide welfare [reunification] services to the minor and the minor's *parents* or guardians for the purpose of facilitating reunification . . . ."

Our Supreme Court in *Zacharia D.* had no trouble determining that "parent" in section 361.5, subdivision (a), did not include a merely alleged biological father.  The court reached this conclusion based on the following reasons, each of which applies equally well to the present inquiry.  First, nowhere does California's dependency legislation generally define "parent" to include a biological father who has not become a presumed father.  (*Zacharia D*, *supra*, 6 Cal.4th at p. 448.)  Second, as stated above, the UPA, now found at Family Code section 7600, et seq., "'distinguishes between a "presumed father" and one who is merely a "natural father"' [citation], 'according presumed fathers greater rights than natural fathers.' [Citations.]  . . .  '[The] Legislature

_____

**4**  The Legislature amended the statute in 1997 to change the word "parents" to "mother and statutorily presumed father."  (1997 Cal Stats. ch. 793, § 18.)

14

meant to provide natural fathers with far less rights than both mothers and presumed fathers have under California's statutory system.'" (*Zacharia D.*, at pp. 448-449, fn. omitted.)  Third, "interpreting 'parent' to include a strictly biological father would introduce into the dependency context fathers who had never demonstrated any commitment to the child's welfare." (*Id.* at p. 451.)  To illustrate this point, the *Zacharia D.* court uses the extreme examples that the inclusion of a biological father in the term "parent" would arguably grant reunification services (or here, visitation during guardianship) to an anonymous sperm donor or even a rapist.  (*Ibid.*)

Similarly, in *In re Emily R.* (2000) 80 Cal.App.4th 1344, the appellate court determined that an alleged father who is a minor, unlike a presumed father who is a minor, is not entitled to have a guardian ad litem appointed to protect his interests until he has appeared and asserted a position.  (*Id.* at p. 1356.)  This is because a minor who has not appeared to assert a position in a dependency case, and who is not a statutorily presumed father, is not a party to the proceedings at all.  (*Ibid.*)

In *In re Sarah C.* (1992) 8 Cal.App.4th 964, 972, the appellate court emphasized that a "father's rights flow from his relationship (or attempted relationship) to the mother and/or child and not merely from his status as the biological father."  Here, father testified that he had seen the child only a few times and spoken to him on the telephone as many as 15 to 20 times, although the maternal grandfather who was providing care for the child set both of those numbers considerably lower.  In addition, the record indicates

15

father had not seen the child since he was removed from mother's custody, and there is no indication in the record that father provided for the child financially.

In *In re J.N.* (2006) 138 Cal.App.4th 450, unless the juvenile court makes a finding of detriment, the decision whether to grant visitation to an incarcerated parent who has been denied reunification services is a matter of the court's discretion. In other words, at that point in the dependency, which is earlier than the section 366.26 hearing at issue in the present matter, the court may deny visitation without making a finding of detriment. (*Id.* at p. 457.)

Finally, a mere biological father is not entitled to reunification services (*Zacharia D.*) at the beginning of the dependency, and can have his parental rights terminated without a detriment finding at the later stages of a dependency (*In re Jason J.* (2009) 175 Cal.App.4th 922, 933-934). "Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) As CFS argues, it remains consistent with the statutory scheme that post permanency planning visitation orders for a mere biological father would be based on the best interest of the child *without* a finding of detriment. As a matter of common sense, we simply cannot reconcile father's asserted definition of "parents" in section 366.26, subdivision (c)(4)(C), with the law's lesser treatment of a biological father's rights earlier in the process, at which time the emphasis on the child's needs for permanency and stability is not as great as *after* the court selects the child's permanent plan.

As the juvenile court pointed out at the section 366.26 hearing, it would be an "anomaly or quirk in that throughout the length of the case, it was perfectly appropriate to deny [father] visitation based on [the child's] best interest or the court's discretion" but now that a permanent plan had been established the court could only deny visitation if it could make a finding of detriment. We conclude that the Legislature did not intend to create such an anomaly or quirk, and that it fully intended the term "parents" in section 366.26, subdivision (c)(4)(C), to include only mothers and presumed fathers. For this reason, the juvenile court here need not have made a finding of detriment before denying father visits with the child during the guardianship.

### DISPOSITION

The juvenile court's order denying father visitation is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

CODRINGTON
J.

17