Filed 12/1/23  In re T.P. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re T.P. et al., Persons Coming Under the Juvenile Court Law. | B322047 consolidated with B324972<br><br>(Los Angeles County Super. Ct. Nos. CK38987, CK38987H, CK38987I) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>Tiffany P.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Aida Aslanian, under appointment by the Court of Appeal, for Respondent Minors.

---

**MEMORANDUM OPINION**[1]

This appeal arises from a dependency case that has been active since 2012. Tiffany P. (mother) appeals two juvenile court orders suspending all contact with the two youngest of her nine children, Te. and Ta. The two children, represented by counsel, are respondents in this appeal and ask that we affirm the juvenile court's orders. We find no error and affirm.

An extensive case background is discussed in *In re T.P.* (Feb. 6, 2020, B297465) (nonpub. opn.) and *In re T.P.* (Mar. 30, 2023, B313540) (nonpub opn.). As stated in those opinions, mother's reunification services were terminated in 2014, but she continued to have monitored visitation with Te. and Ta. During the period relevant to this appeal, late 2021 into 2022, Te. was age 12-13 and Ta. was age 11-12.

The juvenile court suspended all contact between mother and the children at a Welfare and Institutions Code, section

---

[1]   We resolve this case by memorandum opinion. (Cal. Stds. Jud. Admin., § 8.1.) We do not recite the factual and procedural background because our opinion is unpublished and the parties are familiar with the facts of the case and its procedural history. (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely reviewing correctness of trial court's decision "does not merit extensive factual or legal statement"].) Undesignated statutory references are to the Welfare and Institutions Code.

366.26[2] permanency planning hearing on May 3, 2022. Mother appealed this order. At continued section 366.26 hearings on July 14, 2022 and November 1, 2022, the court denied mother's requests to lift the suspension of contact. Mother did not appeal the July order, but did appeal the November order. This court consolidated mother's two appeals.

We find no error in the juvenile court's orders. At the permanency planning stage, if the permanent plan of adoption or legal guardianship is delayed, as it was here, "[t]he court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." (§ 366.26, subd. (c)(4)(C).) We review visitation orders for abuse of discretion (*In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 465) and review a finding that visitation would be detrimental for substantial evidence. (*In re A.J.* (2015) 239 Cal.App.4th 154, 160.) We bear in mind that after reunification services have been terminated, the focus of the case is on "'the needs of the child for permanency and stability.'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

Mother argues there was no "no evidence" that contact between mother and the children was detrimental. This contention is contradicted by the record. The April 13, 2022 status review report filed stated that Te. had been in six placements and Ta. had been in 17 placements. Despite the court's order that mother's visitation be monitored, several sources stated that mother continued initiating unsupervised contact with the children on their mobile phones and through

---

[2]	All further statutory references are to the Welfare and Institutions Code.

social media. On one of these calls, mother was overhead coaching Te. about how to be moved to a new placement; she told Te. to "do anything he needed" to push the caregiver into giving notice to have Te. moved. In text messages in November 2021, mother coached Te. about buying and hiding a vape device. In March 2022, Te. was suspended from school for five days for vaping. Te. told DCFS he would continue acting out until he got expelled from school in an effort to be placed with the B. family, where his brother M. lived.

Te. was placed with the B. family in early April 2022. Notably, M. was in the process of being adopted by the B. family. On April 27, 2022, on a monitored phone call, mother berated Te. for being "fake" and comparing him to M., saying that M. "wants to fall into the fakeness calling someone mom forgetting about our relationship." Mother said to Te., "[M.] went over there and started acting fake. We talked about this . . . many times before you went over there. I said don't go over there and change. . . . Don't be fake like how [M.] is. . . . I expected more of you. You stay the [Te.] that loves his mom and our relationship and don't fall into the fairness [*sic*]." Mother also told Te. that if he started "treating me halfassed," it was "not how we show god [*sic*] we are appreciative of our blessing," and she asked, "Why should I have to remind you of who you are?"

Te. told DCFS he did not want any permanent plan—either adoption or legal guardianship—because he wanted to be able to move out of a placement whenever he wanted to. The B. family "continue[d] to express a concern" about mother contacting Te. "as she is inappropriate and the reason he struggles with wanting to be adopted." DCFS also noted that throughout the case, mother's interactions with the children and their caregivers

impacted the children's placement stability and ability to maintain permanency.

Younger sibling Ta. had behavior problems and special needs that were difficult for caregivers to address, as reflected in his extensive history of placements. Ta. reported that after the court entered the no-contact order, mother attempted to call him. The status review report filed on October 5, 2022 noted that after Ta. was placed with a new potential adoptive parent, "if [mother] was allowed contact with [Ta.], the placement might be sabotaged by the mother. As [Ta.] has been in foster care for over 10 years, and anytime [*sic*] the minor is close to permanency, the caregivers will put in a 14-day notice as a result of the mother." Te. told Ta. that "adoption is dumb."

The minors, through their counsel, requested in May 2022 that all contact with mother be suspended due to mother's "ongoing attempts to . . . sabotage [the children's] placements." After the no-contact order had been in place for several months, DCFS stated in a status review report, "The Department strongly believes the minors [Te. and Ta.] are thriving and closer to permanency because of the No Contact Order with mother."

"Detriment" is a somewhat "'nebulous standard'" dependent on context, but it involves "'some danger to the child's physical or emotional well-being.'" (*In re A.J., supra*, 239 Cal.App.4th at p. 160.) Here, there is substantial evidence that mother's contact with the children was detrimental to their stability and well-being. Mother attempted to sabotage Te.'s permanency by telling him to get in trouble in order to be moved to the B. family's home. Once he was there, mother told him that by acting "fake" like M., who was being adopted, Te. would be rejecting mother, a divine blessing, and his own identity. In addition, mother coached Te. to

5

illegally buy and hide a vape device.  Mother's clear attempts to undermine Te.'s health, welfare and stability, in both monitored and unmonitored contact, constitutes substantial evidence that mother's contact with Te. was detrimental.

As for Ta., mother attempted to call Ta. in violation of the court's no-contact order, and there is an extensive case history demonstrating mother's effect on the children's placements.  Ta.'s stability was also undermined when Te. told him that adoption was dumb.  DCFS believed that Ta.'s stability was improved with the no-contact order in place.  Thus, there was substantial evidence of detriment to Ta. supporting a finding of detriment, and no abuse of discretion in the no-contact orders.

## DISPOSITION

The juvenile court's orders of May 3, 2022 and November 1, 2022 are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


CURREY, P.J.


MORI, J.

6