Filed 1/29/24  K.L. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| K.L., | |
| Petitioner, | E082647 |
| v. | (Super.Ct.No. DPIN2200032) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS, petition for extraordinary writ.  Elizabeth Tucker,

Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.).  Denied.

David A. Wiesen for Petitioner.

No appearance for Respondent.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham, and Prabhath Shettigar, Deputy County Counsel for Real Party in Interest.

K.L. (Mother) petitions for extraordinary writ review of an order setting a hearing under Welfare and Institutions Code section 366.26. (Welf. & Inst. Code, § 366.26, subd. (*l*) [unlabeled statutory citations are to this code]; Cal. Rules of Court, rule 8.452.) She challenges the sufficiency of the evidence supporting the trial court's finding that the return of her children would create a substantial risk of detriment to their safety, protection, or physical or emotional well-being. We conclude that Mother's argument lacks merit, and we accordingly deny the petition.

BACKGROUND

A. *Referral and Detention*

Mother's petition concerns four of her five children: C.R., M.R., J.L., and A.J. In July 2022, during Mother's delivery of A.J., Riverside County Department of Public Social Services (DPSS) received an immediate response referral alleging general neglect because of concerns about Mother's substance abuse. A social worker from DPSS interviewed Mother at the hospital. Mother admitted a history of heroin use but said that she had been sober for over three years. She said that she smokes marijuana but not in the presence of her children. She tested negative for all substances, but A.J.'s meconium test was pending. The maternal and paternal grandmothers agreed to "keep a close eye" on Mother and the children by visiting Mother's home and taking the children on the weekends.

A few days after Mother and A.J. were discharged from the hospital, A.J.'s meconium test returned positive results for amphetamines. Mother insisted that she did not use methamphetamine and stated that her seizure medications could have caused the positive result. Mother took a hair follicle drug test, which was negative for all substances. DPSS offered safe care services to her, but she declined, stating that there was no need for any services.

The following month, maternal grandmother reported that while visiting Mother, she found Mother under the influence in a fetal position on the living room floor with the children present and able to access the drugs and paraphernalia. It took maternal grandmother several minutes to wake Mother. Mother admitted to the social worker that she had relapsed on fentanyl. Mother said that she had used heroin after she visited J.L. and A.J. in early August 2022 and was still planning on entering a drug treatment program.

DPSS filed a petition under subdivisions (a) and (b)(1) of section 300 as to C.R., M.R., J.L., and A.J., alleging substance abuse and general neglect. The next day, the court detained the children from Mother. At the time, C.R. was nine years old, M.R. was eight, and J.L. was seven.

B. *Jurisdiction and Disposition Report*

In its jurisdiction and disposition report, DPSS recommended that the court find the allegations true and order family reunification services for Mother as to J.L. and A.J., who were placed with their paternal grandmother. For C.R. and M.R., DPSS

3

recommended that the court grant their father sole physical and legal custody of the children and terminate jurisdiction.

Mother did not visit the children and did not make herself available to DPSS for an interview.  J.L. told the social worker that she had seen Mother using drugs on more than one occasion.  J.L. said that the children often cannot wake Mother in the morning and have had to feed themselves and get themselves to school.  M.R. had observed Mother's drug use, which included burning a blue pill in foil and inhaling the smoke through a straw.  The children have learned to cook and play inside until Mother regains consciousness.  M.R. changes diapers and cleans up what she can while Mother sleeps.  C.R. mentioned that Mother uses drugs and then sleeps it off.  Eventually, the situation in the home worsened and relatives had to intervene.  M.R. found Mother asleep on the floor, and maternal grandmother removed the children from Mother's home.

DPSS submitted a core services referral for Mother, including substance abuse treatment, individual counseling, parenting education, and psychological testing.  Mother entered an inpatient drug treatment program.

Mother requested that the jurisdiction hearing be set for contest.  She spoke to the social worker and stated that she "wants to 'get right' this time and make a permanent change."  DPSS set up virtual visits with the Mother and the children.  DPSS changed its recommendation to family reunification services for Mother as to C.R. and M.R.

C.  *Contested Jurisdiction and Disposition Hearing*

At the contested jurisdiction and disposition hearing in November 2022 the court sustained the petition and adjudged the children dependents of the court.  The court ordered that A.J. was to remain in Mother's custody with family maintenance services, but the court removed C.R., M.R., and J.L. from parental custody and ordered family reunification services for Mother.[1]

Mother completed an inpatient substance abuse treatment program in December 2022.  DPSS instructed Mother to enroll in aftercare, but she did not do so.  In January 2023 Mother appeared under the influence, and she failed to complete drug testing.  The paternal grandmother reported that A.J. had a diaper rash and a cold when returning from a visit with Mother.  Mother finally drug tested later that month and tested positive for "amphetamine/methamphetamine" and fentanyl.

D.  *Section 387 Petition and Jurisdiction Hearing*

DPSS removed A.J. from Mother's custody pursuant to a protective custody warrant and filed a section 387 petition in February 2023.  Mother reported that she did not understand why the child was being removed from her care.  She claimed that she had been sober since "'sometime in January'" and was planning to enroll in aftercare.  The paternal grandmother believed that Mother was using drugs during visits, because the paternal grandmother had "observed the mother unkempt and having a smell 'like burnt.'"

---

[1]  The court determined that the father of C.R. and M.R. was a noncustodial parent not seeking custody and was a mere biological father not entitled to services.

The trial court detained A.J. from Mother and ordered supervised visits for a minimum of two hours per week. Mother requested that the section 387 jurisdiction hearing be set for contest.

In its section 387 jurisdiction and disposition report, DPSS recommended that the court find true the supplemental allegation that mother continues to abuse controlled substances, remove physical custody of A.J. from Mother, and order family reunification services for Mother. Mother did not enroll in any services and did not drug test as requested by DPSS. Mother's behavior at one visit suggested that she was under the influence. Mother was unwilling to accept further services from DPSS.

At the contested jurisdiction hearing on the section 387 petition, the court found the supplemental allegation true, removed A.J. from Mother's custody, and ordered family reunification services.

E. *Review Hearings and Termination of Reunification Services*

In its six-month status review report regarding C.R., M.R., and J.L., DPSS asked the court to terminate Mother's reunification services. Mother had failed to reenroll in substance abuse aftercare services. There were issues noted with Mother's visits, including that Mother appeared lethargic, visited inconsistently, and had minimal interactions with the children. Mother avoided drug tests, produced invalid drug tests, appeared under the influence during visits, and failed to participate in services. She also "'passed out'" in front of her house and was taken to the emergency room, where it was

6

suspected that she had overdosed. The children were thriving in the care of their maternal and paternal grandmothers.

DPSS also recommended termination of services in its six-month status review report for A.J. DPSS had given Mother a new core services referral in April 2023. Mother's hair follicle drug test was negative that month, and she declined to drug test in May 2023 saying that she would soon enter another residential drug treatment program. Mother visited A.J. in May 2023, but the child did not recognize her and was fussy throughout their visits. Mother reenrolled in an inpatient treatment program in June 2023. The children continued to thrive in their placements.

At the contested six-month status review hearing for C.R., M.R., and J.L. in June 2023, the trial court continued reunification services for Mother because the children were over the age of three at the time of their removal, so there was no statutory basis to terminate reunification services after only six months. The court set a 12-month review hearing for October 2023 and continued the six-month review hearing for A.J. to the same date.

DPSS's 12-month permanency review report as to C.R., M.R., and J.L. recommended that the court terminate Mother's reunification services. Mother had completed her inpatient treatment program and moved to a sober living program in Riverside. She claimed to have been sober since June 20, 2023. But the maternal grandmother expressed concern that Mother has "gone to several residential substance abuse treatment programs, twelve, including the current one, and the mother has not fully

recovered." The maternal grandmother stated that perhaps Mother will need more time or "years to totally rehabilitate."

For A.J.'s six-month status review hearing, DPSS recommended that Mother's services be terminated. Mother visited A.J. appropriately, and A.J. responded well to Mother. DPSS expressed concern with Mother's "significant history of drug use to the point of passing out, while caring for her children" and her history of relapse despite participation in drug treatment programs. DPSS also reported that A.J. is at a critical age and needs consistent caregiving from a stable caregiver.

Mother requested to set both the six-month review hearing for A.J. and the 12-month review hearing for C.R., M.R., and J.L. for contest. The court continued both hearings to November 2023 for Mother's contest.

In an addendum report for the contested hearings, the paternal grandmother expressed concern with J.L. "taking a reverse role because she worries about her mother very much." J.L. told the social worker that she knows "she can take care of her mother" if Mother uses drugs again. J.L. stated that she could have cameras installed so she could see if Mother had an incident while J.L. was at school. The paternal grandmother also reported that Mother did not call to ask how the children were doing.

Mother continued to live at the sober living home in Riverside. But DPSS was concerned about whether Mother would maintain her sobriety. DPSS observed that Mother "does well for some time" but "relapses a few months after completion of rehabilitation and repeats the process again." The grandmothers had taken care of the

children for the past 10 years, and Mother did not have experience caring for the children alone for extended periods of time.

At the contested review hearings for all four children in November 2023 DPSS and minor's counsel asked the court to follow DPSS's recommendations. Mother's counsel requested return of the children to Mother's custody.

The court expressed concern about J.L.'s "taking on the role of protecting mom and wanting to make sure that mom, that, you know, she's going to make sure that mom doesn't relapse anymore. It's really concerning to the Court because that's not what eight-year-old kids [do]." The court was also concerned that Mother was going to overdose in front of her children.

The trial court found that DPSS provided reasonable services and that return of the children to Mother's physical custody would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the children. The court found that Mother failed to participate regularly and make substantive progress in her court-ordered treatment plan, and there was no substantial probability that the children would be returned if Mother received another six months of services. The court therefore terminated reunification services and set a section 366.26 hearing to select a permanent plan for the children.

DISCUSSION

Mother argues that DPSS failed to establish that returning her children to her custody would create a substantial risk of detriment. In particular, Mother argues that

9

because she had completed an inpatient substance abuse treatment program and was thereafter residing in a sober living home, the children were not at risk if returned to her custody. The argument lacks merit.

At the six and 12-month review hearings, "the court shall order the return of the child to the physical custody of their parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to their parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The social worker shall have the burden of establishing that detriment." (§ 366.21, subds. (e)(1), (f)(1).) We review the juvenile court's detriment finding for substantial evidence. (*In re A.J.* (2015) 239 Cal.App.4th 154, 160.)

Substantial evidence supports the court's finding. Mother had a long history of completed substance abuse treatment programs followed by relapse. The maternal grandmother reported that Mother had been in rehabilitation programs 12 times. When A.J. was born in July 2022 Mother admitted using marijuana, and A.J.'s meconium test was positive for amphetamines. The next month, Mother was found under the influence and unconscious on the floor of her living room, with drugs and paraphernalia within reach of the children. Mother admitted that she had relapsed on fentanyl, and she later also admitted using heroin. Thereafter, Mother completed an inpatient substance abuse treatment program but did not enroll in aftercare. A short time later, Mother relapsed again and tested positive for amphetamine and/or methamphetamine and fentanyl. A.J.

10

was removed from her care, and a section 387 petition was filed in February 2023. Mother did not enroll in services or drug test as requested by DPSS pending adjudication of the supplemental petition. A few months later, Mother still had not enrolled in substance abuse treatment services, had been missing drug tests, and was suspected of having nearly overdosed. Meanwhile, her children were doing well in their respective placements.

Mother provided a negative drug test in April 2023 but declined to test the following month. Mother enrolled in another inpatient treatment program in June 2023 and completed it in August. Mother later reported that she had been sober since June 20, 2023, indicating that she continued to use drugs in between her negative test in April and her enrollment in treatment in June.

Given Mother's long history of treatment and relapse, including during the pendency of this case, substantial evidence supports the trial court's finding that return of the children to Mother's custody would have created a substantial risk of detriment to the children's safety, protection, or physical or emotional well-being. Despite Mother's recent (apparent) sobriety and her recent completion of another substance abuse treatment program, the evidence regarding Mother's history amply supports a reasonable inference that there was a substantial risk that she would soon relapse again, thereby putting the children at risk of harm. Substantial evidence therefore supports the trial court's finding that return of the children to Mother's custody would have subjected them to a substantial risk of detriment.

## DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ _____
                                                                        J.

We concur:

RAMIREZ _____
                    P. J.
RAPHAEL _____
                    J.