Filed 4/22/22  In re M.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.G., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E078035 |
| Plaintiff and Respondent, | (Super. Ct. No.  J284265) |
| v. | OPINION |
| I.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander, Judge.  Affirmed.

Jacob I. Olsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

I.C. (Mother) is the mother of seven-year-old M.G., born November 2014, and two-year-old I.B., born November 2019.[1] The children were removed from Mother's care due to issues with substance abuse and domestic violence. Despite receiving over 20 months of services, Mother failed to reunify with her children and her services were terminated. Mother's sole contention on appeal is that there was insufficient evidence to support the juvenile court's finding that there was a substantial risk of detriment in returning M.G. to her care. We disagree and affirm the juvenile court's order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of the San Bernardino County Children and Family Services (CFS) on February 17, 2020, after law enforcement responded to a domestic violence incident in the home. It was reported that Mother and K.T. (I.B.'s father) had been drinking and arguing, and as Mother was attempting to leave in her vehicle with M.G., K.T. followed her to the car and choked her. K.T. also picked up Mother and threw her to the ground. After Mother got up, she hit K.T. once, and he then hit her multiple times on her body. Mother eventually ran into the home, grabbed a knife,

---

[1] M.L.G. is the father of M.G. K.T. is the father of I.B. Neither father is a party to this appeal. In addition, I.B. is not a subject of this appeal.

and chased K.T. while stating she was going to kill him. A witness reported that Mother had tried to stab K.T. with the knife.

When law enforcement arrived, Mother refused to open the door because she had active warrants for her arrest. She was screaming and claimed that she suffered from postpartum depression and was tired from taking care of I.B. I.B. was in the basinet during the incident. She admitted to holding the knife but denied chasing or stabbing K.T. M.G. confirmed the allegations to law enforcement, noting that he had seen K.T. choke Mother and "'almost kill her.'" M.G. also reported that he saw Mother trying to stab K.T. with a knife. Mother was arrested for assault with a deadly weapon and criminal threats, and K.T. was arrested for felony domestic violence.

After Mother and K.T. were arrested, the children were left with the maternal grandmother. The maternal grandmother allowed M.G. to go with his father, and the whereabouts of M.G. and his father became unknown. Eventually, on May 1, 2020, M.G.'s father met with the social worker to place M.G. into CFS custody. M.G. was taken into protective custody and placed with his half-sibling I.B.

On February 24, 2020, petitions were filed on behalf of the children pursuant to Welfare and Institutions Code[2] section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). The children were formally detained the following day at the detention hearing and CFS was ordered to provide Mother with predisposition services.

---

[2] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

CFS recommended that the juvenile court sustain the allegations in the petitions and that Mother be provided with reunification services. Mother and K.T. had a history of engaging in domestic violence. Mother also had a domestic violence history with M.G.'s father and a substance abuse and criminal history. Moreover, Mother had another recent incident involving law enforcement after she threatened a woman on her property. When officers arrived, Mother lied to them about her identity and tried to escape "'out the back door.'" K.T. was present at that time. K.T. and Mother, however, denied they were still a couple. Mother also failed to drug test on five occasions.

The juvenile court took jurisdiction of the matter on August 12, 2020, and continued the matter to assess M.G.'s father and his home for placement of M.G. The court ordered Mother assessed for an inpatient substance abuse program with CFS to facilitate referrals.

By October 2020, Mother continued to fail to drug test and had missed eight drug tests from June to October. Mother admitted to smoking methamphetamines twice a day, but believed it was "'not a problem.'" She claimed that her drinking was the issue and noted drinking a fifth of alcohol per day. She also admitted to living with K.T. and continuing to engage in domestic violence. The social worker spoke with Mother about entering inpatient substance abuse treatment, but Mother wanted outpatient services. On September 16, 2020, Mother enrolled in an outpatient substance abuse treatment program. Nonetheless, four days later she tested positive for drugs.

Mother also continued to violate the law. On September 27, 2020, Mother was drunk and involved in a domestic violence incident with her pregnant sister and her sister's boyfriend. Mother had hit the boyfriend in the face with a glass bottle and then stabbed him with a piece of broken glass. She also grabbed her sister by the throat and punched her in the face three times. In addition, Mother attempted to give a false name to responding officers and was aggressive with them. She also refused to allow her fingerprints to be taken after being arrested and claimed she was pregnant to stop the booking process. After Mother was released from jail, she contacted the social worker and blamed others for the incident. The social worker attempted to get Mother to enter an inpatient substance abuse program, but she refused and insisted she would no longer drink or hang out with her sister. Furthermore, Mother consistently visited her children.

On October 21, 2020, M.G. was declared a dependent of the court and placed with his father under a family maintenance plan.[3] Mother was provided with reunification services and ordered to participate in her case plan. Mother's case plan required her to participate and complete a domestic violence program, a parenting program, general counseling, an outpatient substance abuse program, a 12-step program, and randomly drug test and develop a safety and support network.

By April 21, 2021, CFS recommended that M.G. remain in his father's care under a family maintenance plan and that Mother be provided with additional reunification

---

[3] I.B. was also declared a dependent of the court, removed from parental custody, and placed in a concurrent planning home.

services. CFS referred Mother to a domestic program, general counseling, and a parenting education program on three separate occasions. Mother was making some progress on her case plan, but continued to struggle with managing her emotions, finding a stable place to live, developing a support network, and maintaining sobriety. She also failed to randomly drug test on several occasions. Mother was consistently attending her programs until her arrest on March 4, 2021 for violating her parole after she continued to drink alcohol. The social worker spoke with Mother's probation officer as to whether Mother could be assessed for inpatient substance abuse treatment while in custody. Mother's probation officer indicated that she could recommend Mother be released to an inpatient treatment center and that Mother would be assessed on April 8, 2021 while in custody to determine if she can go to an inpatient treatment center.

On May 18, 2021, the juvenile court maintained M.G. in his father's care and continued Mother's reunification services.

By August 19, 2021, CFS had initially recommended that M.G. remain in his father's care and that the court dismiss his dependency case. CFS also recommended that Mother's reunification services be terminated and that a section 366.26 hearing be set to establish a plan of adoption for M.G.'s half-sibling I.B. During this reporting period, Mother did not have stable housing and often slept in her car and occasionally at the maternal grandmother's home. She, however, was currently employed and had been more consistent with visits. In addition, she had completed a parenting program and was attending domestic violence classes and general counseling. She also participated in an

6

inpatient substance abuse program from April 23, 2021 through June 26, 2021, and was scheduled to start outpatient treatment services. She tested negative on four occasions between May and July 2021, but failed to test on three other instances between July and August 2021.

CFS later changed its recommendation as to M.G. remaining in his father's care after it was informed M.G.'s father had been arrested on an outstanding warrant and charged with felony murder, first degree murder, shooting at an inhabited building, and possession of a firearm. CFS subsequently filed a section 387 supplemental petition on behalf of M.G.

On August 23, 2021, the juvenile court formally detained M.G. from his father's custody.

CFS recommended that M.G.'s father be denied reunification services pursuant to section 361.5, subdivision (e)(1), that Mother's reunification services be terminated, and that a permanent plan of return to Mother's home be ordered for M.G. with Mother to receive services in accordance to the permanent plan. Mother had moved out of M.G.'s father's home and was moving back in with the maternal grandmother. She had completed most of her reunification services with the exception of one more domestic violence class and failing to drug test on August 3 and 10, 2021.

But by October 19, 2021, CFS changed its recommendation as to Mother. CFS recommended that Mother's reunification services be terminated pursuant to section 361.5, subdivision (b)(10), and that a permanent plan of placement for M.G. with a fit

and willing relative be ordered. Mother had begun individual counseling and had completed a domestic violence program. She stated that she would be enrolling in an outpatient substance abuse program, but a few days later she still had not started the program. When the social worker asked her about her participation, she said "'it wasn't ordered by the court.'" She also did not drug test in September or October 2021. The social worker believed that Mother did not appear proactive in maintaining her sobriety.

At a hearing on November 5, 2021, as to I.B., Mother's counsel requested that the court find that Mother had not been provided reasonable services and that her services continue. The court found that Mother had not made substantial progress on her case plan, terminated her reunification services, and scheduled a section 366.26 hearing for I.B. The court stated that it believed that Mother was still struggling with her substance abuse, noting she had completed an inpatient substance abuse program but then subsequently failed to drug test. The court explained there was no evidence that she was "stable, sober and able to provide for [I.B.] and it would be inappropriate to return at this time."

As to M.G., the court found true the allegations in the supplemental section 387 petition true, removed him from his father's care, and declared him a dependent of the court. Mother's counsel requested additional reunification services with M.G. be provided. Counsel noted that Mother had substantially participated in her case plan and made reasonable efforts to treat the issues leading to the removal of I.B. from her care. The court found that Mother was beyond the statutory timeframe and had failed to

8

reunify with her children. The court noted that Mother had received over 20 months of services and that between August and October 2021 Mother was urged to enter an outpatient substance abuse program. Yet, Mother continued to indicate that CFS could not order her to participate in those services as they were not part of her court order. The court also pointed out that Mother had not drug tested since that time, which showed she had not benefitted from services, and substance abuse continued to be an ongoing issue for her. The court found a compelling reason existed for determining that a section 366.26 hearing was not in M.G.'s best interest as no potential legal guardian had been identified and ordered continued weekly visitation for Mother. Mother timely appealed.

III.

DISCUSSION

Mother contends there was insufficient evidence for the juvenile court to find that it would be detrimental to return M.G. to her care. We disagree.

Family reunification services are subject to strict time limitations. "[T]o prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate. [Citations.] To avoid unnecessary delays in the process the Legislature has directed the juvenile court to 'give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.' (§ 352, subd. (a).)" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.) "Under the current dependency scheme, except in limited

9

circumstances, a parent is entitled to 12 months of reunification services, with a possibility of [six] additional months, when a child is removed from a parent's custody. [Citation.] The juvenile court must review the case once every six months. [Citation.]" (*Ibid.*) "'Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability.' [Citation.]" (*In re A.J.* (2015) 239 Cal.App.4th 154, 163.)

If the court finds it would be detrimental to return the child, it has the option of continuing reunification services up to the 18-month review hearing. At that point, the court must either return the child to parental custody or set a hearing under section 366.26 to select a permanent plan.[4] (§ 366.22, subd. (a)(3).) However, reunification services may be extended up to 24 months under section 366.22, subdivision (b), when a parent is: a resident of a court-ordered substance abuse treatment program; or recently discharged from incarceration, institutionalization, or the custody of the United States Department of Homeland Security; or a minor or nonminor dependent parent at the time of the initial hearing. Reunification services may also be extended beyond the 18-month review hearing (1) when the court finds the parent was never provided reasonable reunification services (*In re M.F.* (2019) 32 Cal.App.5th 1, 21); or (2) in a special needs case where there are extraordinary circumstances that prevented the parent from participating in the

---

[4] The court is not required to set a section 366.26 hearing if it finds that the child is not a proper subject for adoption and there is no one willing to accept legal guardianship as of the 18-month review hearing date. (§ 366.22, subd. (a)(3.).) In this case, the juvenile court made such a finding for M.G. at the November 5, 2021, and accordingly, did not set a section 366.26 hearing at that time.

case plan.  (*Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1388; *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1777).  Generally, where "extraordinary special needs are not at issue, . . . the juvenile court's extension of services beyond 18 months [is] an abuse of discretion and in excess of its jurisdiction, as limited by statute." (*Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1511.)  Here, none of the exceptions warranting additional services applied, and there is no dispute that Mother was provided reasonable services.

If reasonable services have been provided to the parent, "section 366.22, subdivision (a) requires the juvenile court at the 18-month review hearing to return the child to the custody of the parent unless it determines, by a preponderance of the evidence, that return of the child would create a substantial risk of detriment to the child's physical or emotional well-being."  (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400; see *In re Marilyn H.*, *supra*, 5 Cal.4th at p. 308; § 366.22, subd. (a)(1).)  It is the department's burden to establish detriment.  (§ 366.22, subd. (a); *In re Yvonne W.*, *supra*, at p. 1400.)  A parent's failure to participate regularly and make substantive progress in court-ordered treatment programs is prima facie evidence that return would be detrimental.  (§ 366.22, subd. (a).)

"In evaluating detriment, the juvenile court must consider the extent to which the parent participated in reunification services.  [Citations.]  The court must also consider the efforts or progress the parent has made toward eliminating the conditions that led to

11

the child's out-of-home placement. [Citations.]" (*In re Yvonne W.*, *supra*, 165 Cal.App.4th at p. 1400.)

We review the juvenile court's finding that a child would suffer detriment if returned to the physical custody of his or her parent for substantial evidence. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763-764.) In doing so, we consider the evidence favorably to the prevailing party and resolve all conflicts in support of the trial court's order. (*In re David M.* (2005) 134 Cal.App.4th 822, 828.) Substantial evidence is evidence that is reasonable, credible and of solid value. (*In re N.S.* (2002) 97 Cal.App.4th 167, 172.)

On a challenge to the sufficiency of the evidence to support the juvenile court's finding, the question is not whether a contrary finding might have been made, but whether substantial evidence supports the finding made by the court. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order." (*Ibid.*) If the finding or order is supported by substantial evidence, it will be upheld. (*Ibid.*)

In this case, we find substantial evidence to support the juvenile court's findings that it would be detrimental to return M.G. to Mother's custody. Mother failed to show that she could consistently maintain her sobriety. Furthermore, despite having completed an inpatient drug treatment program, Mother's actions showed that she had not benefitted from the services provided to her. She continually failed to drug test and claimed that she did not need to enroll in an outpatient drug program. Substance abuse was the primary

factor for the juvenile court's finding that it was detrimental to return M.G. to her care. As noted by the juvenile court, Mother had over 20 months of reunification services but failed to demonstrate she could maintain her sobriety.

Furthermore, it appears Mother had entered an inpatient substance abuse treatment program at the behest of the social worker and her parole officer after her third arrest during this dependency. Before that, she claimed that she preferred an outpatient program and refused to enter an inpatient program. But after she had begun an outpatient substance abuse program in September 2020, she tested positive for drugs four days later. Shortly thereafter, Mother was arrested for assaulting her pregnant sister and her sister's boyfriend. After she was released from custody, the social worker again attempted to get Mother to enter into an inpatient substance abuse program, but she refused. Although several months later Mother was making progress on her case plan, in March 2021, Mother was again arrested for violating her parole due to drinking alcohol with a breath alcohol monitor in her vehicle.

After efforts by her parole officer and the social worker, Mother eventually enrolled in an inpatient substance abuse program from April 23, 2021 through June 26, 2021. She was later scheduled to start outpatient treatment services but refused to enroll in such services, claiming it was not part of a court order. In addition, although Mother had tested negative for drugs on four occasions between May and July 2021, she later failed to test at any point between August and October 2021. As Mother acknowledges, her "no show" tests were considered positive. Mother's failure to drug test or enroll into

an outpatient substance abuse program was evidence that she could not establish her sobriety or show that she had benefitted from the services provided to her. As the juvenile court noted, Mother's refusal to drug test showed she had not benefitted from services and substance abuse continued to be an ongoing issue for her.

Mother contends the evidence showed that she had "completed her case plan, appeared to have benefitted from the services provided, and had made changes in her life that were in M.G.'s best interests." Mother's technical compliance with her court-ordered services, though significant, is not conclusive in determining detriment. It simply means there was not prima facie evidence of detriment. The court must still consider whether she eliminated the conditions leading to her children's removal and whether they would be safe in her custody. (See, e.g., *In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1141-1142.)

The risk of detriment, in this case, was Mother's history of abusing substances and her domestic violence history with both fathers and her family. While Mother had ended her volatile relationship with the fathers and completed a domestic violence program, the risk of detriment to M.G. still existed due to Mother's failure to maintain sobriety and benefit from the services provided. In fact, Mother's use of substances appeared to be the root cause of her domestic violence incidents. Her use of substances led her to act irrationally and violently towards I.B.'s father and her relatives. Moreover, Mother had not completely complied with her case plan, but had substantially fulfilled the obligations of her case plan. As previously noted, Mother had refused to participate in an outpatient

treatment program following her competition of inpatient services and had repeatedly failed to drug test.  Based on the evidence in this case, the juvenile court could find that it would be detrimental to place M.G. with Mother, even under the supervision of CFS.

Our review of the record shows there is substantial evidence to support the court's finding that despite Mother's commendable efforts to complete her case plan, she had yet to establish that she had maintained her sobriety consistently over a sufficient period of time to provide M.G. with a safe and stable environment.  In cases involving a parent's substance abuse, the juvenile court must consider the likelihood of whether the parent will maintain a "stable, sober and noncriminal lifestyle for the remainder of [the child's] childhood."  (*In re Brian R.* (1991) 2 Cal.App.4th 904, 918.)  Although Mother had made commendable progress toward addressing her drug problems by participating in, and completing, an inpatient drug treatment program and attaining some negative drug tests, the juvenile court reasonably could infer that she had not yet overcome her drug abuse problem and ameliorated the reason for the children's initial removal.

Based on the entire record and, in particular, Mother's long history of drug and alcohol abuse and belated efforts to address her substance abuse problems, the juvenile court reasonably could conclude that Mother needed to maintain a longer period of sobriety to show she could safely care for M.G. and provide him with the stability he requires.  Accordingly, we conclude there is substantial evidence to support the court's finding that at the time of the November 5, 2021 hearing the return of M.G. to her

15

custody would create a substantial risk of detriment to his physical or emotional well-being.  (§ 366.22, subd. (a)(1).)

## IV.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON            
J.

We concur:


McKINSTER            
        Acting P. J.


MILLER            
         J.