Filed 10/10/23  In re A.G. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| In re A.G. et al., Persons Coming Under the Juvenile Court Law. | C097493 |
| LASSEN COUNTY HEALTH AND SOCIAL SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>L.B. et al.,<br><br>Defendants and Appellants. | (Super. Ct. Nos. 2021-JV0066063; J6145, 2021-JV0066065; J6146, 2021-JV0066067; J6147, 2021-JV0066069; J6148, 2021-JV0066071; J6149, & 2021-JV0066472; J6621) |

Appellants L.B. (mother) and A.B.G. (father), parents of the minors A.C.G., T.G., Al.G., Z.G., C.G., and Am.G. (collectively, the minors), appeal the juvenile court's order terminating parental rights and ordering adoption as the permanent plan as to Al.G., Z.G., C.G., and Am.G., and ordering a permanent plan of guardianship as to A.C.G. and T.G.

1

(Welf & Inst. Code,**1** §§ 366.26, 395.) The parents claim the Lassen County Health and Social Services Agency (Agency) and the juvenile court failed to comply with the requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). Additionally, mother separately claims that the juvenile court erred when it denied her visitation with the minors, A.C.G. and T.G.

We will conditionally affirm the juvenile court's judgment and remand for limited ICWA proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Prior Dependency Proceedings*

On July 21, 2015, the Agency filed a dependency petition on behalf of the minors, A.C.G., T.G., Al.G., Z.G., and C.G., pursuant to section 300, subdivisions (a) (serious physical harm), (b)(1) (failure to protect), (c) (serious emotional damage), and (j) (abuse of a sibling) (2015 case). The juvenile court took jurisdiction and ordered family reunification services to both parents.

During the detention hearing in the 2015 case, mother advised the juvenile court she may have Native American ancestry through the Seneca tribe, and father denied having any Native American ancestry. The juvenile court directed the Agency to undertake an inquiry. Subsequently, notice of child custody proceeding for Indian child forms (ICWA-030) were sent to four Seneca tribes on July 28, 2015, August 10, 2015, and again on September 14, 2015. The notices provided information regarding mother and father but did not provide any information regarding any of their respective relatives. It is unclear from the record whether the Agency interviewed any of the minors' relatives regarding potential Native American heritage. The six-month status review report

---

**1**      Undesignated statutory references are to the Welfare and Institutions Code.

indicated the Agency had received all negative responses from the tribes, although no tribal responses were included in the record.

At the six-month review hearing, the juvenile court found the ICWA did not apply and ordered the minors reunified with the parents under a plan of family maintenance services. Subsequently, the court determined the services were no longer needed and ordered the dependency terminated.

## II

### *Initial Dependency Proceedings*

On July 21, 2021, mother reported to the police department that father was sexually abusing three of the minors. The minors, Al.G. (then age eight), Z.G. (then age six), and C.G. (then age six), disclosed the sexual abuse. Two of the other minors, A.C.G. (then age 13) and T.G. (then age 11), disclosed physical abuse. Additionally, the family home was unsanitary, had marijuana within reach of the children, and there was recurrent domestic violence in the home. A sixth minor born after the 2015 case, Am.G. (then age four), had visible dental decay from neglect. On July 26, 2021, the Agency filed a dependency petition on behalf of the minors, pursuant to section 300, subdivisions (a) (serious physical harm), (b)(1) (failure to protect), (c) (serious emotional damage), (d) (sexual abuse), and (j) (abuse of a sibling). The Agency's detention report referenced the prior ICWA finding in the 2015 case. However, it also acknowledged that on July 27, 2021, mother stated she had Native American ancestry with the Seneca tribe. Father stated that he did not have any Native American ancestry.

At the July 29, 2021 detention hearing, the juvenile court ordered the minors detained. Additionally, the court found, without making any inquiry of the parents, that the ICWA did not apply based on the finding in the 2015 case. Mother was granted supervised visitation with the minors one time per week for two hours and father was denied visitation.

3

*Jurisdiction And Disposition*

The Agency's August 18, 2021 jurisdiction and disposition report disclosed the parents' prior 2015 case, an additional 2009 dependency case, and other child welfare referrals. Additionally, the report disclosed the extensive prior criminal history of the parents. Mother had enrolled in parenting classes and peer support services, and she completed a mental health assessment finding that she met "medical necessity." The minors, A.C.G. and T.G., had been provided mental health services and T.G. had "some self-harming behaviors and was in extreme duress prior to a supervised visit with mother." Mother had three supervised visits and was instructed not to talk to the minors regarding the case after she mentioned certain allegations to T.G. It was reported that when asked about father's sexual abuse of mother's eldest daughter, a half sibling to the minors, in a 2009 dependency action, mother minimized the abuse and blamed her daughter. There, mother waived reunification services, and the half sibling was placed in long-term foster care.

At the September 7, 2021 jurisdiction hearing, the juvenile court found the allegations of the petition true and took jurisdiction.

On September 30, 2021, the Agency filed a disposition report requesting that reunification services be denied to both parents pursuant to section 361.5, subdivision (b)(6) and (7) with respect to Am.G., and section 361.5, subdivision (b)(3), (6), and (7) as to both parents with respect to A.C.G., T.G., Al.G., C.G., and Z.G. Both A.C.G. and T.G. stated that they wished to live with mother.

According to an August 28, 2021 psychological evaluation of mother, Dr. Lea Tate expressed the opinion that mother had "limited awareness of her difficulties," and that it was unlikely mother would seek or "cooperate fully with treatment." Dr. Tate expressed the opinion: "[Mother's] several omissions during the clinical interview are problematic given that she is purposefully presenting herself in a positive light to obtain

her children back without insight into the reason why they are currently gone from the home. She is acting as if the children are possessions and need to be back where they belong." She was diagnosed with major depressive disorder.

At the March 7, 2022 continued disposition hearing, mother testified that at the time of the first dependency action in 2009, she was not aware of any sexual abuse of the minor and felt she had been protective. With regard to allegations that the children were physically abused, mother testified that she did not take any steps to intervene, stating that she wasn't able to "get to a working tablet," which was the only thing she knew she could "get to" in order to call 911. She denied that the younger minors experienced any physical abuse. With respect to the neglect allegations, mother claimed that she "did what [she] could to get [Am.G.] to the dentist." Mother also admitted that she failed to follow up on concerns that Am.G. had a heart condition. Mother denied that father hit T.G. and denied that T.G. complained to her about headaches from father hitting his head. Mother testified that all the harm to the minors was the fault of father, but she acknowledged that she had been in a relationship with father for 14 years, having never left him during the abuse. She continued to deny that father previously sexually abused the half sibling, despite the fact that the allegation was substantiated.

On March 14, 2022, the juvenile court issued findings and orders following the dispositional hearing. The court found the ICWA did not apply to the minors. The court found the minors dependents of the court and ordered the removal of the minors for appropriate placement. The court denied reunification services to both parents pursuant to section 361.5, subdivision (b)(3), (6), and (7). As to visitation, the court granted mother one hour per month of supervised visitation with the minors, denied visitation to father, and granted unsupervised visits between each minor and their siblings. Finally, the court scheduled a selection and implementation hearing pursuant to section 366.26.

5

IV

*Section 366.26 Hearing*

On June 10, 2022, the Agency filed a section 366.26 report recommending permanent plans of legal guardianship for the minors, A.C.G. and T.G.  As to the minors, Al.G., C.G., Z.G., and Am.G., the Agency recommended the parents' parental rights be terminated and that the minors be placed for adoption.  Further, the Agency recommended that visitation between either parent and the minors, A.C.G. and T.G., be found detrimental and terminated.  The report noted that one or more of the minors became dysregulated at every visit with mother, and the visits were frequently chaotic.  Mother also sometimes undermined the minors' placements, including criticizing and questioning about the minors' caretakers.  While mother offered some praise and encouragement to the minors, she also "frequently ignored the children's misbehavior" and "sometimes invalidated their feelings."  Mother often ignored the minors' attempts to get her attention, especially with T.G.  Mother also frequently failed to protect the minors from each other during visits, with the minors frequently escalating verbally and physically during visits.  Despite warnings, mother also failed to follow visitation orders prohibiting her from discussing the case with the minors.  Despite redirection, mother continued to interact with the minors inappropriately during the "large majority" of the visits, "including discussion of adult topics, excessive gift giving, making promises, coaching the children, [and] shaming them."  The social worker reported that even after six months of visitation, the minors remained "emotionally reactive" to their visiting mother, and that at the end of every visit, at least one of the minors "unraveled."

On September 22, 2022, at a combined hearing, the juvenile court denied mother's section 388 request to change the court order denying her reunification services.  The court then proceeded with the section 366.26 hearing.  The social worker testified that none of the younger minors wished to go home or increase visits with mother.  Mother testified that the minors would rush over each other at visitation in order to get her

6

attention but attributed it to the limited time for visits. Regarding speaking to the minors about the case, mother claimed it only occurred in the beginning because she was under the impression the minors were all allowed to go to court. Mother's counsel argued that the section 366.26, subdivision (c)(1)(B)(i) beneficial parental relationship exception applied as an exception to the adoption of the minors. The court summarized, for each child, the circumstances that lead to the removal of the minors. In determining that the beneficial parental relationship exception did not apply, the court reasoned: "There is significant sustained long-term abuse and neglect to all of these children. . . . [T]he acquiescence, the participation of [mother] in not protecting her children, not being able to move, take in and absorb everything. . . . [S]he has significant psychological issues of her own that interfere with her ability to see her significant and ongoing detriment to the children." Counsel for the minors, A.C.G. and T.G., noted that these minors wished to have continued visitation with mother but acknowledged the court's finding of detriment. The court adopted the findings recommended in the Agency's report, found continued visitation between mother and A.C.G. and T.G. to be detrimental based on the court's prior finding of continued detriment, and terminated visitation between mother and the minors.

DISCUSSION

I

*The ICWA*

The parents contend the Agency failed to make a sufficient ICWA inquiry, and the juvenile court failed its obligation to ensure that the Agency met the inquiry and notice requirements of the ICWA. They claim that there was no ICWA inquiry of any of the minors' relatives either in the 2015 case or in the case at hand. They further claim the Agency failed to further inquire when mother indicated she might have Seneca tribe ancestry in the present case. We agree.

7

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' [Citation.]" (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The juvenile court and the Agency have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)

"[S]ection 224.2 creates three distinct duties regarding [the] ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

8

Mother cites section 224.2, subdivision (b),[2] which imposes a more extensive duty to inquire about Indian ancestry if a child is placed in the temporary custody of a welfare department (§ 306) or probation department (§ 307): "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).)

The Agency does not dispute mother's claim that the record does not show that it made *any* inquiry of any of the minors' extended family members. The Agency instead argues that any error is harmless because the record does not support a reason to believe that the minors may be " 'Indian child[ren]' within the meaning of [the] ICWA, such that the absence of further inquiry was prejudicial." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578; see *id*. at pp. 779-782.) Recently, our Supreme Court granted review in *Dezi C.*, and we anticipate further clarification on this

---

**2**      As mother observes, the record here is ambiguous about whether the minors were taken into temporary custody pursuant to section 306 or protective custody pursuant to a warrant. When a minor is taken into protective custody pursuant to a warrant, some have questioned whether the mandates of section 224.2, subdivision (b) are applicable, and interpretations of the statute have varied. (Compare *In re Robert F.* (2023) 90 Cal.App.5th 492, 500, 504, review granted July 26, 2023, S279743 [holding that the duty to inquire of extended family members under § 224.2, subd. (b) is triggered only when a child is taken into temporary emergency custody under § 306], *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572 [following *In re Robert F.*] with *In re Delila D.* (2023) 93 Cal.App.5th 953, 973 [holding that § 224.2, subd. (b)'s "reference to temporary custody 'pursuant to [s]ection 306' is better read as including children who, though initially removed by protective custody warrant, are then delivered or placed into the department's custody pending a detention hearing" and the child welfare agency's duty of inquiry is the same regardless of how the minor was removed from the home].) The parties requested and submitted supplemental briefing on this question of law. However, because the juvenile court and the Agency failed to perform *any* ICWA inquiry in this matter, instead relying on the 2015 case's ICWA finding, we need not reach this issue at this juncture. We assume that on remand, the juvenile court will require the Agency to make further reasonable inquiries of extended family members, as appropriate.

issue. Until such time, we conclude that given the Agency's concession and the remedial purpose underlying the ICWA and related California law intended to protect third-party rights, we will apply the analytical framework set forth by the California Supreme Court in *In re A.R.* for assessing harm and we conclude the error is prejudicial. (*In re A.R.* (2021) 11 Cal.5th 234, 252-254 [determining whether an error is prejudicial requires viewing the error through the lens of the remedial purpose of the law at issue].)

Here, after mother initially claimed Seneca tribe ancestry, the juvenile court failed to make any ICWA inquiry with either mother or father, and the Agency failed to satisfy its obligation to inquire. The record is devoid of any evidence that the Agency made attempts to contact any relatives for purposes of conducting the ICWA inquiry, either during the 2015 case or in the case at hand. The Agency "has a duty 'to document it[s inquiry] and to provide clear information to the court.' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 406.)

Here, there was a reason to believe the minors were Indian children. Although father denied Native American ancestry, mother informed the Agency she may have Seneca tribe ancestry. This triggered the duty of further inquiry. The only information included in the Agency's reports was the ICWA finding in the 2015 case that the eldest five minors were not Indian children within the meaning of the ICWA. Contrary to the Agency's assertion, however, the ICWA determination in the prior case is not dispositive here. (See *In re M.E.* (2022) 79 Cal.App.5th 73, 84 [holding that the information the child welfare department provided to the juvenile court from a prior dependency case involving the family was "insufficient for the juvenile court to make a finding, some three to four years later, that the [d]epartment had met its ICWA inquiry obligations"].) The tribal notices in the 2015 case did not include any names of the maternal grandparents or great-grandparents, or any additional information beyond the parents' names. Had the Agency interviewed relatives in 2015, it could have obtained additional pertinent family history information to send in the notices. Additionally, the juvenile

10

court in the case at hand adopted the prior ICWA finding without any analysis as to whether the prior finding was correct and without indicating it had even reviewed *any* of the ICWA materials from the prior case for itself. As the Agency concedes, it never inquired of any maternal or paternal relatives. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.) It is also possible some relatives have become members of the tribe in the years since the prior inquiry. While the Agency "is not required to 'cast about' for information or pursue unproductive investigative leads" (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1053), it is required to "make further inquiry" when there is a "reason to believe" the child is an Indian child, as there was here (§ 224.2, subds. (a), (b), (e)). Where the agency fails its duty of initial inquiry and there is readily obtainable information that is likely to bear meaningfully on the ICWA investigation, the appellate court must remand for further inquiry. (*In re Benjamin M.*, at p. 744.) We will conditionally affirm and remand the matter for further ICWA proceedings.

II

*Visitation Order*

Mother next argues the juvenile court erred in denying her visitation after ordering a permanent plan of guardianship of the minors, A.C.G. and T.G. We disagree.

Section 366.26, subdivision (c)(4)(A) states, "If the court finds that adoption of the child or termination of parental rights is not in the best interest of the child . . . the court shall order that the present caretakers or other appropriate persons shall become legal guardians of the child." When the juvenile court makes such an order, "[t]he court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." (§ 366.26, subd. (c)(4)(C).) Thus, a court ordering legal guardianship for a child is required to order visitation with the child's parents, unless the court finds that visitation is not in the child's best interest. (*In re M.R.* (2005) 132 Cal.App.4th 269, 274.) However, the power to regulate visitation between parents

11

and dependent minors rests with the juvenile court.  (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1557-1558.)  The court has great discretion in deciding visitation and we will not disturb the juvenile court's decision absent an abuse of discretion.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)  We review the finding of detriment under this statute for substantial evidence.  (*In re A.J.* (2015) 239 Cal.App.4th 154, 156, 160.)

Here, we conclude there is substantial evidence supporting the juvenile court's finding that visitation with mother would be detrimental to the minors, A.C.G. and T.G.  " 'Detriment is a familiar standard in child welfare determinations,' " under which " 'the risk of detriment must be substantial, such that [the proposed action] represents some danger to the child's physical or emotional well-being.' "  (*In re A.J.*, *supra*, 239 Cal.App.4th at p. 160, italics omitted.)  The evidence recited above left little question that contact with mother caused A.C.G. and C.G. significant psychological harm.  Specifically, one or more of the minors became dysregulated at every visit, the visits were frequently "chaotic," mother undermined the minors' placements, mother often ignored the minors' attempts to get her attention, and mother frequently failed to protect the minors from physical and verbal altercations with each other during visits.  Despite redirection, mother continued to interact with the minors inappropriately during the "large majority" of the visits, "including discussion of adult topics, excessive gift giving, making promises, coaching the children, [and] shaming them."  Even after six months of visitation, the minors remained "emotionally reactive" to their visiting mother, and at the end of every visit, at least one of the minors "unraveled."  T.G. in particular had "some self-harming behaviors and was in extreme duress, prior to a supervised visit with mother."  A.C.G. was reported to feel the need to "justify himself or his mother, and exhibited extreme emotional dysregulation during these justifications."  This evidence is sufficient to support the juvenile court's detriment finding.

In arguing otherwise, mother leans on the fact that A.C.G. and T.G. repeatedly expressed that they wished to have continued visitation with mother.  While the eldest

12

two minors were clearly attached to mother and as counsel for A.C.G. and T.G. observed, it was a difficult question because although the minors wished to have continued visitation, counsel also acknowledged there was a clear finding of detriment. The record substantially supports the determination that further visitation would endanger A.C.G.'s and T.G.'s mental well-being. These particular minors, while most attached to mother of the sibling group, were also the most reactive to mother before, during, and after visits. Indeed, the social worker described the bonds between the minors and mother as follows: "The bonds and loyalty between the children and their mother were forged in trauma. The children have experienced the serious deficiencies of their parents in providing for, protecting, and nurturing them, and these issues remain present such that future contact between each child and both parents is detrimental." Based on the ample support for the juvenile court's decision in the record, we conclude that the juvenile court did not err by finding visitation detrimental and denying visitation to mother under section 366.26, subdivision (c)(4)(C).

## DISPOSITION

The judgment is conditionally affirmed and the case is remanded with instructions to the Agency and the juvenile court to conduct an additional ICWA investigation and inquiry consistent with this opinion. If that inquiry reveals evidence of Indian ancestry, then all relevant ICWA requirements must be complied with. If it does not, then the juvenile court shall make the appropriate ICWA finding on the record and the judgment shall be reinstated forthwith.


/s/_____,
ROBIE, Acting P. J.


We concur:


/s/_____,
KRAUSE, J.


/s/_____,
BOULWARE EURIE, J.

14