Filed 2/9/24  In re D.H. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION EIGHT

| | |
|---|---|
| In re D.H., a Person Coming Under the Juvenile Court Law. | B325184 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAMIEN H.,<br><br>    Defendant and Appellant. | Los Angeles County Super. Ct. No. CK84291C |

        APPEAL from an order of the Superior Court of Los Angeles County.  Jennifer W. Baronoff, Commissioner. Affirmed.

        David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

        Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Father, Damien H., appeals the juvenile court's order appointing a legal guardian for his daughter D.H. without ordering visitation for father and, in the alternative, the court's denial of his request for a continuance of the matter. We affirm.

Substantial evidence—substantiated allegations that father sexually abused D.H.—supports the court's conclusion that visitation with father would be detrimental to D.H. As such, the court was not required to order visitation for father under Welfare and Institutions Code[1] section 366.26, subdivision (c)(4)(C).

The court did not abuse its discretion in denying father's request for a continuance to allow father, who was absent from the hearing, to challenge the sexual abuse allegations against him. Father's counsel provided no explanation as to why father was absent from the hearing where visitation was at issue. Father failed to establish good cause for a continuance.

## BACKGROUND

This appeal raises narrow questions in the context of long-running dependency proceedings. We limit our recitation of the facts to those pertinent to the issues before us.

The underlying proceedings are older than D.H. Her brother was born in 2010 and became the subject of a dependency case 18 days after birth. Her sister was born in 2012 and became the subject of a dependency case seven days after birth. They were detained on various substantiated allegations that included neglect, emotional abuse, physical abuse, and drug and alcohol use by one or more of the parents, and domestic violence between the parents.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

2

D.H. was born in May 2013. The Los Angeles County Department of Children and Family Services (Department) detained her when she was two months old based on concerns about father's violence toward mother, failure to comply with juvenile court orders, and history of substance abuse, as well as mother's failure to protect. By that time, both parents had already had their reunification services terminated as to D.H.'s brother (though mother had successfully petitioned to have hers reinstated), and their services for her sister were in jeopardy. D.H. was declared a dependent in August 2013.

D.H. was first placed with mother. But a few months later, she was removed and placed, together with her siblings, in foster care. Father lost his ability to visit with them sometime in 2014 when he was arrested and sentenced to more than two years in jail for possession of a controlled substance.

The children thereafter moved from foster placement to foster placement, not always together.

The juvenile court terminated parents' reunification services in March 2016. Father was released from jail but then reincarcerated for about six months and released again in late 2016. Upon his release, he was admitted to an inpatient substance abuse treatment center and resumed visitation with the children.

In October 2017, the juvenile court granted father's petition for reinstatement of services.

In May 2018, the court ordered D.H. and her siblings returned to father's custody. Though father admitted to struggling with caring for three young children, they were observed to be happy and fairly stable in his care as of November 2018. All three children remained with father until March 2019,

3

when they were again removed, this time based on allegations that father was abusing amphetamine, methamphetamine, and alcohol and not participating in court-mandated treatment programs and other services. D.H.'s brother was placed with a previous foster caregiver. D.H. and her sister were placed with a new foster caregiver.

D.H. and her sister's caregiver reported the girls were "extremely sexualized" and she believed they had seen people in father's home having sex. The girls—and especially D.H.—were fixated on sex, which they called " 'Shake Butt,' " bringing it up often, and acting it out. On one occasion, the caregiver found D.H. in her sister's bed and "both of the girls' underwear were down and [her sister] reported that [D.H.] was trying to 'Shake Butt' with [her]." When, in spring 2019, the Department asked the girls about anyone touching their private areas, D.H.'s sister denied it but responded, " '[d]id [D.H.] say I touched her[?]' " D.H. said, "[my sister] touched my vagina and I touch hers," then stared at the social worker for a few seconds before saying, "no I trick you." D.H. described in detail watching people having sex at father's house. She did not then claim father or any other adults touched her private areas.

In July 2019, the court terminated services for father and set a section 366.26 hearing for November 2019. Father continued to visit with the children over the next several weeks until he was incarcerated again in mid-September 2019. D.H. and her sister continued to move from foster placement to foster placement. Father continued to have contact with the children from jail by telephone.

In 2021, both D.H. and her sister, who were then separately placed, refused telephone visits with father. They said

4

they did this because he touched them inappropriately when they lived with him. D.H.'s report of being touched in her vaginal area by both father and his friend generated a referral to the Department. The Department closed the referral as inconclusive, noting it was "historical" and father did not then have access to D.H. because of his incarceration.

Father was released from jail in early April 2022 and resumed in-person visitation with the children shortly thereafter. Within the month, he filed another petition for further reunification services. The juvenile court commenced an evidentiary hearing on father's petition in early May 2022, at which father testified. The court was impressed by the self-improvement father had undertaken while incarcerated. The hearing was continued to permit more visitation between father and D.H. and her sister. The court entered an order expanding father's visitation rights.

A few weeks later, D.H.'s sister refused to attend a scheduled visit with father. She explained she did not feel safe visiting with him because, when she and her siblings were living with father in 2018 and 2019, father would "*rub her private parts with his hand*" and would "*ask her to take all her clothes off and go to bed, [and] father would take all his clothes [off] too and would get in bed with her*." Father reportedly "*told her not to tell anyone and that it would be their secret*." The person reporting this information relayed that all the children feared father and that his recent petition for custody could result in them being returned to his care.

The Department responded with an investigation. Its interview with D.H.'s sister confirmed the initial report. D.H. stated father rubbed her vaginal area and buttocks while she was

5

naked in bed with him and that she had seen him do the same to her sister. She also stated some of father's friends, while at the home consuming drugs and drinking alcohol, had touched her vaginal area. A caregiver for the children reported that each of them engaged in inappropriate sexual behaviors after being in father's care. D.H.'s brother, who told the caregiver he watched pornographic videos in father's home, had become "an entirely . . . different child"—"sexualized, jumpy, and disrespectful towards people"—after living with father. Further, the siblings "[could not] be left alone with one another because they d[id] not know how to interact appropriately and attempt[ed] to touch each other's private parts."

Based on its investigation, on June 10, 2022, the Department filed an ex parte application to terminate father's visitation rights under the order the juvenile court entered the preceding month. The court granted the Department's application on an interim basis on June 15, 2022 and, following a hearing on June 21, 2022, ordered "no visitation for Father pending the next court date." The record does not include a transcript of that hearing.

On June 29, 2022, the Department determined D.H.'s and her sister's allegations of sexual abuse by father were substantiated. Upon notifying father of this determination, he responded " 'I want the children to be adopted and stay with their caregivers.' "

Different relatives agreed to adopt D.H.'s siblings. D.H.'s caregiver was unwilling to adopt her but agreed to serve as her legal guardian. On July 20, 2022, father withdrew his April 2022 petition for further reunification services and submitted to termination of his parental rights to D.H.'s siblings so they could

be adopted. D.H.'s case was continued to October 18, 2022. At the conclusion of the July 20, 2022 hearing, mother's counsel stated: "[a]s to [D.H.], I am asking for the Department to continue working with the mother and [D.H.], to have contact and visit. And in one of the latest [last minute information filings with the court], [D.H.] did say that she would like contact with her mother." The court responded, "Department is ordered to continue working on visitation for both parents." Children's counsel then "remind[ed] the court the court made a finding as for father, had an objection"—an apparent reference to the court's June 2022 no-visitation order. The court responded, "Right. Right. Mother not to monitor."

At the continued section 366.26 hearing on October 18, 2022, father was not present. His absence is not explained in the record. The juvenile court ordered legal guardianship as D.H.'s permanent plan, without any provision for visitation by father.

Father did not contest the legal guardianship but his counsel objected to the lack of visitation. According to father's counsel, the Department had to file a section 388 petition to terminate father's visitation rights and, alternatively, the matter should be continued to allow father to make an evidentiary presentation.

The juvenile court determined it could consider visitation as part of the section 366.26 hearing without a section 388 petition and declined to continue it. The court found visitation with father would be detrimental to D.H. In support, the court read from the Department's report of D.H.'s allegations of inappropriate touching by father, as well as a last minute information from July 2022 noting that visitation with Father led to regressive acting out by D.H.

Father timely appealed.

## DISCUSSION

**1.  There was no error in the juvenile court's detriment finding.**

We do not address the Department's argument that father waived his challenge to the juvenile court's detriment finding because the finding was manifestly supported by substantial evidence.

When ordering legal guardianship, a juvenile court "shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well being of the child." (§ 366.26, subd. (c)(4)(C).) " 'Detriment is a familiar standard in child welfare determinations; but . . . the notion of detriment is at best a nebulous standard that depends on the context of the inquiry. . . .  It cannot mean merely that the parent in question is less than ideal . . . .  Rather, the risk of detriment must be *substantial*, such that [the proposed action] represents some danger to the child's physical or emotional well-being.' " (*In re A.J.* (2015) 239 Cal.App.4th 154, 160.)

We review the juvenile court's finding that visitation would be detrimental for purposes of section 366.26, subdivision (c)(4)(C), under the substantial evidence standard. (*In re A.J.*, *supra*, 239 Cal.App.4th at p. 160.)  We examine the whole record in a light most favorable to the findings and conclusions of the juvenile court and defer to the lower court on issues of credibility of the evidence and witnesses.  (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733-734.)  Evidence is "[s]ubstantial" only if it is " 'reasonable, credible and of solid value; it must

8

actually be substantial proof of the essentials that the law requires in a particular case.' " (*In re A.J.*, at p. 160.)

Father argues the girls' reports of sexual abuse are not substantial evidence because they were "belied by various factors": the time elapsed between the alleged abuse and the reporting; the absence of sexual abuse allegations contemporaneous with the alleged abuse or at the time of the girls' detention; positive reports about the girls' wellbeing during the period of alleged abuse; and that some of the allegations came after father disclosed his intention to regain custody of the girls. As to this last point, father argues "[i]t is quite reasonable to assume that the girls raised the issue of the alleged sexual abuse, not because of any such abuse, but other unpleasantries involved in living with father. . . . In other words, there was incentive to manufacture sexual abuse allegations in order to insure not being removed from their successful, nurturing placements."

None of these facts compels a conclusion that father did not sexually abuse his daughters. The record, including the Department's determination that the girls' claims of abuse were substantiated, amply supports the conclusion that father sexually abused them. Put simply, father asks us to discount evidence the juvenile court found credible to reach a contrary conclusion. This we cannot do. (*In re Caden C.* (2021) 11 Cal.5th 614, 640.)

Father denies he is asking us to reweigh the evidence. He contends his complaint is that the juvenile court "failed to consider its decision in light of the whole record and not simply the recent accusations of years-old sexual abuse." His support for this claim is just another attack on the evidence—that "[i]t defies logic that [father] would go completely out of character and

9

sexually abuse his young daughters after working so hard to complete the services required to gain custody."

We presume the juvenile court performed its duty and considered all necessary matters.  (Evid. Code, § 664; cf. *In re Julian R.* (2009) 47 Cal.4th 487, 498-499.)  Father fails to defeat this presumption with the inference he asks us to draw.  Father does not dispute that, after working hard to regain custody, he allowed friends into his home who drank alcohol, consumed drugs, and had sexual intercourse in front of his young daughters.  Whatever value might otherwise lie in the implication that father prioritized maintaining custody above all else, the facts simply do not support that inference.

**2.  The juvenile court did not abuse its discretion in denying father's request for a continuance.**

A juvenile court may not continue a hearing beyond the statutory outside date to conduct it if doing so would be "contrary to the interest of the minor.  In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements."  (§ 352, subd. (a)(1).)  A continuance may be granted "only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance."  (*Id.*, subd. (a)(2).)  "Courts have interpreted this policy to be an express discouragement of continuances."  (*In re Karla C.* (2003) 113 Cal.App.4th 166, 179.)

The parties agree the limitations of section 352 apply to father's request to continue the section 366.26 hearing.  We

10

review the juvenile court's denial of the request for abuse of discretion.  (*In re Karla C., supra,* 113 Cal.App.4th at p. 180.)

The juvenile court denied father's continuance request for his failure to show good cause.  The only cause father offered was in the form of a proffer from his attorney, who stated "[f]ather would like to challenge the contents of the reports that he essentially sexually abused the minor and would like to show the court that visits can occur safely in a monitored setting."  The court responded, "Thank you.  The court is not finding that sufficient.  The court is denying that request."

Father was aware since not later than June 2022 that his daughters alleged he sexually abused them; that the juvenile court credited these allegations (it suspended his visits with his daughters); and that the Department had substantiated the allegations through interviews with the girls and others.  He also had notice that his right to future visitation with D.H. would be at issue at the October 2022 hearing.  Indeed, the court had expressly ordered "no visitation for Father pending next court date."  That order was continued in effect until the October 2022 hearing.  As father concedes in his reply brief, the record shows "the juvenile court on July 20, 2022, fully expected to decide the visitation issue at [the October 2022 hearing]."

Given this, it was incumbent upon father to address his visitation and why he believed he was entitled to resume it at the October 2022 hearing.  That he was absent from the hearing and therefore unable to mount the challenge he wanted to make is not grounds for a continuance without some valid justification for his absence.  (*Nahas v. Nahhas* (1955) 135 Cal.App.2d 440, 442 ["The mere absence of a party standing alone is insufficient to compel the court to grant a continuance"].)  As father notes in his

11

opening brief, the record does not show why father was absent. This demonstrates a lack of good cause for continuance, not an abuse of discretion by the juvenile court in proceeding.

Finally, father implies the juvenile court's July 2022 order that the Department "continue working on visitation for both parents" took the question of a detriment finding off the table for the October 2022 hearing. We disagree. Counsel for the Department and for children both immediately took issue with this directive. The children's counsel said, "I was just going to remind the court the court made a finding as for father, had an objection." The court responded, "Right. Right." If anything, this exchange served to underscore the Department's and the children's opposition to future visitation with father and that such visitation would be a contested issue at the October 2022 hearing.

## DISPOSITION

The juvenile court's order of legal guardianship is affirmed.

GRIMES, J.

WE CONCUR:

STRATTON, P. J.

VIRAMONTES, J.

12